RECEIVED

MAY 29 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| NOVA CASUALTY COMPANY | CIVIL ACTION NO. 14-0207 |
| VERSUS | JUDGE DOHERTY |
| GUY'S TOWING SERV., INC., ET AL. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

The instant case was filed by Nova Casualty Company ("Nova") as a declaratory judgment action, in which Nova seeks a declaration from this Court that it does not owe uninsured motorist ("UM") coverage under a policy of liability insurance issued to its insured, Guy's Towing. The matter comes before the Court on cross motions for summary judgment. In its Motion for Summary Judgment, [Doc. 21], Nova seeks dismissal with prejudice of the claims of the decedent's parents[1] on grounds the undisputed material facts show the "Nova policy issued to Guy's Towing Services, Inc... at the time of the subject accident did not provide UM/UIM coverage because Guy's Towing executed a valid and effective rejection of UM/UIM coverage." In response, counterclaimants Terry Allen Louviere and Kathy Ann Miller Louviere – the parents of the decedent – filed a Motion for Summary Judgment [Doc. 26], in which they seek a "declaratory judgment" in their favor, arguing the Nova UM waiver form is invalid, and UM coverage is therefore owed. Because both motions turn on the issue of whether UM coverage exists under the policy in question and implicates all issues alleged in the case, the instant motions are true dispositive cross-motions for summary judgment.

Both parties filed responsive briefs [Docs. 26 & 30], and the counterclaimants filed a Motion

---

[1] The decedent's parents, Terry Allen Louviere and Kathy Ann Miller Louviere, who were sued as defendants in this matter, asserted a counterclaim against Nova for UM benefits under the Nova policy.

for Leave to File Reply Memorandum in Support of its Motion for Summary Judgment [Doc. 32], which is herein GRANTED.

**I.   Factual and Procedural Background**

The following facts are undisputed:

1.  At all pertinent times, Aubert King was the president and duly authorized legal representative of Guy's Towing.

2.  On or about November 10, 2011, Nova issued a policy of liability insurance to Guy's Towing bearing Policy No. TIP-CL-0011023-0, with effective dates of November 10, 2011 to November 10, 2012 ("the 2011-12 Nova Policy").

3.  In connection with the issuance of the 2011-12 Nova Policy, on November 10, 2011, Guy's Towing, through Mr. King, executed a form related to a waiver of UM coverage, and indicated on this form that Guy's Towing wished to limit uninsured/underinsured motorist coverage under the 2011-12 Nova Policy to the amount of $50,000.00.

4.  With regard to the form executed on behalf of Guy's Towing on November 10, 2011:

    a.  Mr. King initialed the form next to the selection of coverage lower than the liability limits;
    b.  The amount of UM coverage selected for each person and each accident – $50,000.00 – was filled in;
    c.  Mr. King signed his name on every page;
    d.  An application number – APP36623104 – was filled in on the first page of the five-page form; and
    e.  Mr. King dated the form on every page.

5.  On November 9, 2012, Nova issued a policy of insurance to Guy's Towing bearing Policy No. TIP-CL-0011023-I, with effective dates of November 10, 2012 to November 10, 2013 ("the 2012-13 Nova Policy").

6.  In connection with the issuance of the 2012-13 policy, Mr. King executed a form related to a waiver of UM coverage on behalf of Guy's Towing, this time indicating Guy's Towing's wish to reject uninsured/underinsured motorist coverage for the November 10, 2012-November 10, 2013 policy period.

7.  With regard to the form executed on behalf of Guy's Towing on November 9, 2012:

    a.  Mr. King initialed the form next to the selection of coverage lower than the

2

                    liability limits;
- b. Coverage was rejected outright;
- c. Mr. King signed his name on every page;
- d. The policy number – TIP-CL-0011023-0R – was filled in on the first page of the five-page form; and
- e. Mr. King dated the form on every page.

8. On or about June 30, 2013, while parked on the shoulder of Interstate 10 in St. Martin Parish, Blaze Louviere, an employee of Guy's Towing, was loading a disabled vehicle onto a tow truck owned by Guy's Towing when an allegedly uninsured/underinsured motor vehicle operated by Luis Molinda struck and killed Mr. Louviere.

9. Mr. Louviere's surviving parents, Terry Allen and Kathy Ann Miller Louviere, made a demand for UM benefits under the 2012-13 Nova Policy.

10. Relying upon the form executed in connection with the 2012-13 Nova Policy, Nova denied the Louviere's claim and demand for payment of insurance proceeds under the Nova policy.

11. On February 6, 2014, Nova filed the instant declaratory judgment action in this court in order to obtain a judgment declaring that the Louvieres are not entitled to insurance proceeds under the UM provisions of the 2012-13 Nova Policy. On May 27, 2014, the Louvieres filed a counterclaim against Nova and Mr. Molinda, seeking, among other things, insurance proceeds under the UM provisions of the 2012-13 Nova Policy.

Nova filed the instant motion for summary judgment, arguing it is entitled to a declaratory judgment – and dismissal with prejudice of the Louvieres' counterclaim against it – ordering that the "Nova policy issued to Guy's Towing Services, Inc. . . at the time of the subject accident did not provide UM/UIM coverage because Guy's Towing executed a valid and effective rejection of UM/UIM coverage." In response, counterclaimants Terry Allen Louviere and Kathy Ann Miller Louviere seek a "declaratory judgment" in their favor, arguing the Nova UM waive form is invalid, and UM coverage is therefore owed by Nova. The Court will consider the arguments of the parties in turn.

## II. Law and Analysis

### A. Jurisdictional Basis

Jurisdiction in this matter is premised upon diversity jurisdiction (28 U.S.C. §1332), therefore Louisiana law governs the substantive issues of law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The parties do not dispute that Louisiana law governs the contract of insurance at issue and, specifically, the UM/UIM waiver form at issue.

### B. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or declaratory judgment is sought may, at any time, move with or without supporting affidavits for summary judgment in the parties' favor as to all or any part thereof." Fed. R. Civ. Pro. 56(b). Summary judgement is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or is otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. Pro. 56(e)

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the

non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

[. . . .]

... In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. *Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.*

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(emphasis added)).

The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both

> parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### C.     Interpretation of insurance contracts under Louisiana law

Louisiana courts construe insurance policies like any other contract, according to the parties' intent as expressed in the words of the policy. La. Civ.Code art. 2045-2048. An insurance policy must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La. Rev. Stat. § 22:881. The Louisiana Supreme Court emphasizes the importance of reasonableness in insurance policy interpretation:

> An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion ....
>
> If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer.

6

> That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.

*Sher v. Lafayette Ins. Co.*, 988 So.2d 186, 193 (La. 2008) (citations omitted).

### D.  Analysis

The parties agree the sole issue before the Court is whether there has been a valid rejection of UM coverage by Guy's Towing, and there are no contested material issues of fact with regard to this legal question. Thus, the question of whether Guy's Towing validly waived UM coverage is a question of law for the Court to decide. If Guy's Towing validly waived UM coverage, there is no coverage for the Louvieres' claims, and the instant motion for declaratory judgment should be decided in Nova's favor. However, if the UM waiver is not valid, denial of coverage was not proper, and UM coverage exists up to the limits of liability coverage. *See, e.g., Duncan v. USAA Ins. Co.*, 950 So. 2d 544, 549 (La. 2007) (where UM waiver is invalid, coverage exists up to limits of liability coverage). *See also Gray v. Am. Nat. Prop. & Cas. Co.*, 977 So.2d 839, 845 (La. 2008) (UM coverage is presumed in automobile liability policies at same level as liability coverage unless insurer can prove "a valid rejection of UM coverage or selection of lower limits."). The parties agree as to the framing of the issue in this manner.

As an initial matter, this Court notes that Nova, as the insurer, bears the burden of proving a valid UM waiver. UM coverage is presumed in automobile liability policies at the same level as the liability coverage unless the insurer can prove "a valid rejection of UM coverage or selection of lower limits." *Gray v. Am. Nat. Prop. & Cas. Co.*, 977 So.2d 839, 845 (La. 2008). Any exclusion from coverage in an insurance policy must be clear and unmistakable, and an insurer has the burden

of proving by clear and unmistakable evidence that a UM rejection form is valid. *Daigle v. Authement*, 691 So. 2d 1213, 1214; *Dozier v. Okoorkwo*, 82 So. 3d 516, 519 (La. App. 1st Cir. 2011). Moreover, it is the public policy of Louisiana that insurance exclusions are to be strictly construed in favor of coverage. *Elliott v. Cont'l Cas. Co.*, 949 So. 2d 1247, 1254 (La. 2007).

Louisiana law is clear that in order to validly reject UM coverage, the required information must be on a UM rejection form "prescribed" by the Louisiana Department of Insurance, as set forth in La. Rev. Stat. 22:1295(1)(a)(ii), as follows:

> (ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.

Thus, according to the statutory language, rejection of UM coverage must be effectuated in the <u>form</u> prescribed by the Commissioner and ultimately provided by the insurer. The statute does not provide more specific details about the form, only that it is to be "prescribed" by the Insurance

Commissioner and provided by the insurer.

The leading case discussing the requirements for such a form is *Duncan v. USAA Ins. Co.*, 950 So. 2d 544, 549 (La. 2007) (the information must be made "only on a form prescribed by the commissioner of insurance."). In *Duncan*, the Louisiana Supreme Court held in order for a UM rejection form to be valid, the applicant must carry out six (6) tasks in applying the form, to wit:

> (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen, then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; **(5) filling in the policy number**; and (6) filling in the date.

950 So. 2d at 551 (emphasis added). Thus, in *Duncan*, the Louisiana Supreme Court clarified that the form is considered valid if it requires the completion of the six tasks enunciated in the case. *See, e.g., Terrell v. Fontenot*, 96 So.3d 658, 663-64 (La. App. 4th Cir. 2012) ("In *Duncan* . . ., the Louisiana Supreme Court determined the prescribed form requires the completion of six tasks to effectuate a valid UM coverage form."). Beyond these six tasks, the statute provides no additional guidance as to how the form should physically appear, and neither the statute nor the jurisprudence requires a uniform format to be used by all insurers or a specific document of a required length be used in order to effectuate a valid UM waiver.

In *Duncan*, the court held the failure to include the policy number on the rejection form itself is sufficient to invalidate a UM rejection form. Specifically, a UM rejection is invalid if it omits the policy number when a policy number is available at the time the waiver is signed. *See, e.g., Tate v. Unitrin Auto & Home Ins. Co.*, 5 So. 3d 1014 (La. App. 3rd Cir. 2009); *See also Phillips v. Bush*, 67 So. 3d 1264 (La. App. 5th Cir. 2011); *Alexander v. Est. of McNeal*, 44 So. 3d 338, 341 (La. App. 3rd Cir. 2011). Since *Duncan*, however, the Louisiana Supreme Court has concluded that filling in the

9

policy number is not essential to a valid UM coverage waiver when the policy number "does not exist at the time the UM waiver form is completed." *See, e.g., Carter v. State Farm Mut. Auto. Ins. Co.*, 964 So.2d 375, 376 (La. 2007). *See also Gray v. American Nat. Property & Cas. Co.*, 977 So.2d 839, 847, n. 2 (La. 2008). Insurance Commissioner Bulletin LIRC 98–03 specifically provides, "in the case where a policy number is not available, the space for the policy number may be left blank or a binder number may be inserted."

In the instant case, Guy's Towing filled out <u>two waivers</u> in connection with the purchase of liability insurance. The first, executed on November 10, 2011, is a five-page form entitled "Louisiana Commercial Auto Coverages/Limits Section." For purposes of this ruling, the Court will refer to this form as the "Commercial Auto" form. The Commercial Auto form contains blanks for the name of the insured, the insurance carrier, and the policy number, and also contains a general summary section for specific coverages, including (but not limited to) liability coverage, medical payments, UM coverage, and hired/borrowed liability. On the first page of the five-page November 10, 2011 Commercial Auto form, Guy's Towing included: (1) the name of the insured ("Guy's Towing); (2) the name of the insurance carrier (Nova); (3) the application number for the insurance policy (APP36623104) in the blank for the policy number; and (4) a notation limiting UM coverage to $50,000.00. The first page is signed by Mr. King and is dated November 10, 2011. Page 4 of the Commercial Auto form – which is clearly noted at the bottom as "page 4 of 5" – is titled "Uninsured/Underinsured Motorist Bodily Injury Coverage Form." This page provides 4 options for UM coverage, including limited coverage, as well as no coverage at all. On this page, Mr. King selected coverage of $50,000.00; and he signed and dated it November 10, 2011. No policy number appears on this page of the Commercial Auto form. On the bottom right hand side of this page is

a box containing the words "Optional information for policy identification purposes only." The box is left blank, and the Louvieres argue the failure include the policy number in this box renders the UM waiver invalid.

The second waiver – executed on November 9, 2012 – is identical to the first waiver except for two features: (1) the November 9, 2012 waiver contains an actual policy number (TIP-CL-0011023-I) on the first page of the form; and (2) on pages 1 and 4 of the document, Guy's Towing selects no UM coverage. Again, the Louvieres argue that because the policy number is not included on page 4 of the Commercial Auto form, the waiver of UM coverage is not valid.

As Nova points out, the Louvieres' argument that the wavier of UM coverage is invalid in this case because the policy number is not included on page four of the five-page Commercial Auto form is premised on the notion that the UM waiver must be contained within a single page. However, the Louvieres cite to no jurisprudence supporting such an argument, and this Court was unable to locate any authority for such a proposition. Indeed, the statute governing the waiver document provides no details as to how the form should appear, but notes, merely, that the form will be prescribed by the Commissioner and provided by the insurer. In the instant case, the Commercial Auto document – consisting of five pages – is clearly labeled at the bottom of each page as such, that is, each page is labeled as <u>one page of a whole</u>. Thus, the drafters of the document appear to have intended for the reader to read each page of the document as merely <u>one</u> page of the <u>five</u> page document. Furthermore, the Louvieres are correct that the policy number must be filled in on the <u>waiver</u>. However, Nova is correct that no Louisiana court has ever held the waiver document must be limited only to a single page. Therefore, the Louvieres have presented no evidence or argument that the "form" used does not meet the requirements of the Commissioner. To the contrary, the

document contains all six of the required tasks enumerated by *Duncan*, albeit within five pages of the five-page document. The Louvieres, however, argue the failure to list the policy number on one of the five pages, *i.e.*, page four, of the Commercial Auto form, is fatal, notwithstanding the policy number is clearly listed on page one of the five-page document. However, the inclusion of the policy number on page one of the five-page Commercial Auto form appears to comply with the requirements of the less-than-precise language of La. Rev. Stat. §22:1295(1)(a)(ii), and with the instruction of *Duncan*.

After much consideration, this Court concludes there has been a valid waiver of UM coverage in the instant case. The policy number for the 2012-13 policy is clearly included on page one of the five-page waiver form, which is clearly labeled as a multi-page document, and also clearly indicates to the reader that additional information (including the policy number) can be found on other pages of the five-page document. Here, the policy number is located on page one of five.

In making its ruling, this Court is mindful of the strong public policy in favor of UM coverage in Louisiana. Indeed, as the Louisiana Supreme Court noted in *Roger v. Estate of Moulton*,

> The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. Accordingly, to effect a valid rejection of the UM coverage under La. R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. (Citations omitted.)

513 So.2d 1126, 1130 (La.1987), *cited with approval in Duncan*, 950 So.2d at 547. However, the Court is also aware of the danger of hypertechnical interpretation of the waiver rules. While it is true

that the cases cite by Nova in this regard focus on the technicality of an *insured's name*[2] as it appears on a waiver form, this Court notes that where the waiver language appears within *a five-page document*, clearly labeled on one page of the multiple pages, and where the policy number appears on page one of the same five-page document, and when the statute does not limit waiver forms to a single page, this Court concludes the document or form must be considered as a whole under these facts and, therefore, this Court finds the insurer has carried its burden to establish the five-page document constitutes a valid waiver of UM coverage.

The parties spend much time briefing the issue of whether the November 9, 2012 waiver form supersedes the November 10, 2011 waiver form. However, because this Court concludes that both waiver forms are valid – because the policy number and/or the application number appears on page one of both forms, and perhaps of greater relevance because the coverage in question is sought for the policy year 2012-13, when UM coverage was outright rejected in the Commercial Auto form -- such discussion is unnecessary.

Because there was a valid waiver of UM coverage, the Court concludes UM coverage was effectively waived in this instance, and Nova is entitled to a declaratory judgment in its favor.

### III. Conclusion

Considering the foregoing, IT IS ORDERED that the Motion for Summary Judgment filed by Nova Casualty Company is GRANTED and the Cross Motion of Counterclaimants Terry Allen Louviere and Kathy Ann Miller Louviere for Declaratory Judgment [Doc. 21] is DENIED. Nova Casualty Company is entitled to a judgment that UM coverage was effectively waived in this

---

[2] *See, e.g., Scarborough v. Randle*, 109 So.3d 961 (La. App. 3rd Cir. 2013); *Banquer v. Guidroz*, 8 So.3d 559 (La. 2009).

instance. Nova is therefore entitled to a dismissal of the counterclaims of Terry Allen Louviere and Kathy Ann Miller Louviere against it.

It appears that the instant Ruling resolves all disputes between the parties and is, therefore, dispositive of the case. Therefore, IT IS ORDERED that the parties shall submit a Final Judgment, approved as to form, within ten days of the date of this Ruling.

THUS DONE AND SIGNED in Lafayette, Louisiana, this __29__ day of May, 2015.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE